## LITTELL v. ARGUS PRODUCTION CO.
### No. 1234.

Circuit Court of Appeals, Tenth Circuit.
Aug. 13, 1935.

Harvey C. Osborne, of Wichita, Kan. (Yankey, Osborne & Sears, of Wichita, Kan., G. H. Terrill, of Elkhart, Kan., and John C. King, of Liberal, Kan., on the brief), for appellant.

Lawrence Weigand, of Wichita, Kan. (George W. Cox and L. E. Curfman, both of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action at law to recover damages for personal injuries. Plaintiff's father owned 160 acres of cultivated land in Morton county, Kan., and he executed an oil and gas lease upon it. Defendant acquired the rights of the lessee in the lease and drilled a well for oil and gas. The derrick was anchored by guy wires to so-called "dead men" located about 120 feet away. They consisted of boards tied together with five-eighths inch galvanized wire looped around them, and were buried in the ground with the loop extending six or eight inches above the surface. It was the custom to bury dead men from 2 to 5 feet below the surface. Drilling was begun in May, 1930; gas was discovered in June, and the well was capped to prevent escape of gas; the derrick and other equipment were then removed, and the well allowed to·stand idle until about August 1, 1931, at which time it was connected with the gathering system and gas was delivered from it. Quite frequently wells in that field had to be cleaned out or bailed some time after drilling had been completed, and it was the custom to leave a dead man used in drilling in the ground so that the tractor used in cleaning or bailing could be anchored to it. After the derrick and other equipment were taken away, the land appeared to be restored to its original condition and was suited to farming.

Plaintiff and his brother planted the land to milo maize in June, 1931. Before doing so, they walked over it to ascertain whether there was anything which might injure the machinery, and saw nothing of that nature. Late one afternoon, while plaintiff was engaged in cultivating the crop with a five-row knife sled drawn by a caterpillar tractor, the engine stalled and was about to die. He investigated and discovered that the sled and knives were entangled with the loop of a dead man and an attached piece of wire cable, called a "sand line," situated about 100 or 120 feet from the place where the derrick had stood. The sand line was twisted to the loop below the surface but extended above it. In order to free the cultivator, plaintiff got under it, dug around and untwisted the sand line from the looped wire. The engine was then started forward, but the sand line was still tangled with the sled and knives. Plaintiff's brother had arrived in the meantime, and the two of them got around or under the cultivator in an effort to free the entanglement. Plaintiff grabbed hold of the sand line with his gloved hands to pull it loose. The wire was rusted and had countless small sharp particles, called "whiskers," sticking out from the surface. One of them ran through his hand. Infection followed, which necessitated amputation of one finger. He suffered great pain, loss of time, and incurred expenses.

At the conclusion of the evidence·submitted by plaintiff, the court sustained a motion for a directed verdict in favor of defendant on the ground that the evidence failed to establish negligence and, further, that, if the act of leaving the dead man in the ground constituted negligence, it was not the proximate cause of the injury. Judgment was rendered accordingly, and plaintiff appealed.

The trial court entertained the view that, in leaving the dead man in the ground for use in anchoring the tractor to it if the well·had to be cleaned or bailed, defendant conformed to the prevailing custom in that field, and consequently there was no negligence. Perhaps the single act of leaving a dead man buried in the ground for such subsequent use would not constitute actionable negligence, if buried at the usual and at a safe depth, but it is unnecessary to explore that question, because this case presents additional facts and involves more. The cultivator did not become entangled with a mere dead man buried in the ground. It encountered a dead man with a piece of rusted sand cable firmly attached to it. The two were twisted to-

gether below the surface, but the cable, with its rusted protruding whiskers, extended above it. It was not customary to leave a combination of that kind when the derrick and other equipment were removed, and whether defendant did so in this instance was a question of fact. Defendant knew in 1930 and in 1931 that the land was being cultivated. If the dead man and attached sand cable were left there and if a person of ordinary caution and prudence should reasonably have anticipated that, in their condition and proximity to the surface, they would become entangled with the machinery used in cultivating the land, and plaintiff's injury resulted in a natural and normal manner from such an entanglement without fault on his part, defendant is liable. It is not necessary that the particular injury should have been foreseen. It is enough that entanglement with the necessity to correct the situation should have been anticipated, and that in doing so in a natural and normal way injury might reasonably occur. Hutton v. Link Oil Co., 108 Kan. 197, 194 P. 925. Without entering into a more extended discussion, for no useful purpose could be served in doing that, we think the question of negligence was one for the jury under proper instructions of the court.

The court sustained the further contention that the negligence of defendant, if any, was not the proximate cause of the injury; that instead it resulted from intervening and unrelated causes. It is urged here that those causes were the acts of plaintiff in bringing the cultivator in contact with the dead man and attached cable, in driving the tractor forward after learning of the entanglement, thereby wedging the cable more firmly in the sled and knives, and in pulling the cable with such force that the whisker penetrated his hand.

If two distinct causes are successive and unrelated in their operation, one is proximate and the other remote. In such circumstances, liability, if any, grows out of the proximate cause, and a court will disregard the remote. An intervening efficient cause is a new, intermediate, and self-executing act which breaks the causal connection between the original wrong and the injury. But, in order to absolve the initial wrongdoer from liability, the intervening act must break the chain of events in such a manner that the injury cannot be said to be the natural and probable consequence of the original wrong or to have been anticipated. In the absence of such an intervening cause, the original wrong extends to the result and proximates it. Snider v. Sand Springs Ry. Co. (C. C. A.) 62 F.(2d) 635. We think the acts of plaintiff in bringing the cultivator in contact with the dead man and attached cable, in driving the tractor forward after the cable had been separated from the loop, and in pulling the wire for the purpose of disentangling it, cannot be said as a matter of law to be so unrelated to the initial and primary negligence of defendant in leaving the dead man and cable in the field as to constitute an intervening self-executing cause which justified the court in directing a verdict. Hutton v. Link Oil Co., supra, and cases there cited. The testimony and its reasonable inferences presented an issue of contributory negligence which should have been submitted to the jury.

For the reasons indicated, the judgment is reversed, and the cause remanded, with direction to grant a new trial.